IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TERRY POSEY d/b/a<br>POSEY GUN AND PAWN,<br><br>    Plaintiff,<br><br>v.<br><br>MERRICK GARLAND, Attorney General<br>of the United States; UNITED STATES<br>DEPARTMENT OF JUSTICE; and THE<br>BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS AND EXPLOSIVES,<br><br>    Defendants. | Civil No.: 1-23-CV-00051-JRG-CHS |

## **RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

The Defendants, Merrick Garland, Attorney General of the United States, the United States Department of Justice, and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), by and through Francis M. Hamilton III, United States Attorney for the Eastern District of Tennessee, hereby respond – without waiving any defenses, *see* Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 7. – in opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 9)[1].

**I.**

**STATEMENT OF RELEVANT FACTS**

Plaintiff Terry Posey is the owner of Posey Gun and Pawn located in Cleveland, Tennessee. (Doc. 1 at ¶ 3.) Plaintiff has been a licensed firearms dealer since 2011, and was licensed to sell firearms as a federal firearms licensee under license number 1-62-011-02-3B-05028. (*Id.* at ¶ 5-

---

[1] Defendants note that the Plaintiff's motion was not served on undersigned counsel by mail or other means. No appearance had been made yet on behalf of Defendants, and Plaintiff apparently relied on service through ECF, which in the absence of an appearance by defense counsel was not effective. Undersigned counsel learned of the filing of Plaintiff's motion during a periodic review of this case's electronic filings conducted as a result of a previous statement by Plaintiff's counsel that such a motion would likely be filed.

6.) On December 10, 2019, ATF began a compliance inspection at Plaintiff's premises. (*See* Doc. 10-1, Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License[2], at 3.) Based on that inspection, ATF issued ATF Form 4500 to Plaintiff on June 30, 2022, a Notice to Revoke or Suspend License and/or Impose a Civil Fine. (*Id.*) This Notice informed Plaintiff of his willful violations of the Gun Control Act of 1968 ("GCA"), 18 U.S.C. Chapter 44, and the regulations issued thereunder, codified at 27 C.F.R. Part 478. The violations willfully committed by Plaintiff included the transfer of a firearm to a purchaser that Plaintiff knew or had reasonable cause to believe was underage, the transfer of a firearm to a purchaser without completing a background check which was later denied due to the purchaser's status as a person involuntarily committed to a mental institution or adjudicated as a mental defective under 18 U.S.C. § 922(g)(4), the failure to report multiple sales, and false statements made in required records. (Doc. 10-1 at 4-9.)

Similar violations were cited during the Plaintiff's 2017 compliance inspection. (*Id.* at 10.) The violations from the 2017 compliance inspection included the failure to conduct a background check, the failure to report multiple sales of pistols or revolvers, and making a false statement or representation with respect to information required to be kept by the GCA. (*Id.*) As a result of the 2017 inspection, Plaintiff attended a warning conference with ATF in which violations and proposed corrective actions were reviewed. (*Id.*) Following the warning conference, ATF sent a letter informing Plaintiff that "any future violations, either repeat or otherwise, could be viewed as willful and may result in revocation of his license." (*Id.*, at 6.)

---

[2] Doc. 10-1 has been redacted in order to remove the names of all third-party firearms purchasers listed therein. The Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License that was served on Plaintiff's counsel on or about January 6, 2023 did not redact the names of the third-party firearms purchasers since this information was derived from Plaintiff's own records.

In a letter dated July 7, 2022, Plaintiff timely requested a hearing to review the Notice to Revoke or Suspend License and/or Impose a Civil Fine issued on June 30, 2022. (*Id*.) This hearing occurred on October 27, 2022 at the ATF Field Office in Chattanooga, TN, during which both the Plaintiff and ATF offered testimony and exhibits, and the hearing was transcribed. (*Id*.)

Following the hearing on October 27, 2022, a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License ("Final Notice") was issued to Plaintiff on January 6, 2023, by Steven Kolb, ATF's Director of Industry Operations ("DIO") for the Nashville Field Division. (*See generally* Doc. 10-1.) In this Final Notice, DIO Kolb documented findings of fact for the numerous violations of the GCA committed by Plaintiff, which include the following:

1. On one (1) occasion, Plaintiff as licensee willfully sold or delivered a firearm other than a shotgun or rifle to a person who he knew or had reasonable cause to believe was less than twenty-one years of age in violation of 18 U.S.C. § 922(b)(1) and 27 C.F.R. § 478.99(b)(1). (*Id*., at 4.)

2. On one (1) occasion, Plaintiff as licensee knowingly and willfully transferred a firearm to a person not licensed under the GCA after failing to comply with the procedures applicable to conducting a national instant criminal background check[3] in violation of 18 U.S.C. § 922(t)(5) and 27 C.F.R. § 478.102(a). (*Id*. at 5.) At the time of the proposed transfer, the system was operational and such background check would have demonstrated that receipt of the firearm by the transferee would violate either 18 U.S.C. § 922(g) or 18 U.S.C. § 922(n). (*Id*.)

3. On eleven (11) occasions, Plaintiff as licensee willfully failed to timely and/or accurately report the sale or other disposition of two or more pistols and/or revolvers during any five consecutive business days to an unlicensed person in violation of 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a. (*Id*.)

4. On four (4) occasions, Plaintiff as licensee willfully made a false statement or representation with respect to information required by the GCA in violation of 18 U.S.C. § 922(m) and 27 C.F.R. § 478.128(c). (*Id*. at 7.)

---

[3] Plaintiff failed to wait on a response from the Tennessee Instant Background Check System (TICS) and transferred a firearm while the background check was still in a "pending" status. (*Id*. at 5-6.) TICS denied the transfer within minutes of the background check being initiated by Plaintiff because the purchaser was a person involuntarily committed to a mental institution or adjudicated as a mental defective under 18 U.S.C. § 922(g)(4). (*Id*.)

3

Upon consideration of all relevant facts and circumstances presented by both Plaintiff and the ATF, DIO Kolb determined that Plaintiff as licensee willfully violated the GCA and its associated regulations. (*Id*. at 3, 9-10.) In the Final Notice, DIO Kolb noted that, while Plaintiff did not dispute that the violations of the GCA occurred, Plaintiff took issue with the finding that the violations were committed willfully, an issue he again takes up in the instant action. (*Id*. at p. 10; Doc. 1 at ¶ 18.) DIO Kolb also specifically noted the public safety risks associated with the violations committed by Plaintiff and found that Plaintiff's history of making false statements in required records was particularly egregious. (Doc. 10-1 at 10.) As a result of Plaintiff's willful violations of the GCA, Plaintiff's federal firearms license was revoked. (*Id*.)

## II.

## STANDARD OF REVIEW

### A. Standard of Review for Motion for Preliminary Injunction.

"A preliminary injunction is an extraordinary and drastic remedy . . . [and] it is never awarded as of right . . . ." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal quotation marks omitted). The party moving for a preliminary injunction has the burden of proof. *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) ("A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."). And, that burden must be met "by a clear showing." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (internal quotation marks and emphasis omitted). Even then, the final decision of whether a preliminary injunction should be issued is within a court's discretion. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982).

The following factors are considered when determining whether a preliminary injunction should be issued:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000). "These factors are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Id.* However, "[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Therefore, the two most important considerations are irreparable harm and strong likelihood of success on the merits. *Fish and Chicken Land, Inc. v. U.S.*, No. 11-14413, 2013 WL 1729357, at *2 (E.D. Mich. Apr. 22, 2013); *Cox v. Corr. Med. Servs., Inc.*, No. 06-10350, 2006 WL 3147733, at *4 (E.D. Mich. Oct. 25, 2006).

**B. Standard of Review for *De Novo* Review of Revocation of Federal Firearms License.**

The court's review of ATF's revocation of Plaintiff's federal firearms license is limited to whether ATF's denial was "authorized." 18 U.S.C. § 923(f)(3); *see Morgan v. U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives*, 473 F. Supp. 2d 756, 762 (E.D. Mich. Feb. 9, 2007) (…the narrow question whether the Attorney General's decision was authorized, does not call upon this Court to decide whether it would revoke he license in its own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license.); *Fairmont Cash Mgmt., LLC v. James*, 858 F.3d 356 (5th Cir. 2017); *Arwady Hand Truck Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754 (S.D. Tex. Aug. 7, 2007); *Pinion Enterprises, Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1317 (N.D. Ala. June 3, 2005).

5

# III.

# LEGAL ARGUMENT

A. <u>**Authority to Terminate Stay**</u>

Plaintiff initially contends that no provision of 18 U.S.C. § 923(f) authorizes the Attorney General to terminate the stay granted under 18 U.S.C. § 923(f)(2) or to implement revocation. Rather than citing to any cases within the United States Court of Appeals for the Sixth Circuit supporting this contention, Plaintiff instead simply asserts that such authorization appears at odds with the language of the statute as well as perceived congressional intent. However, district courts within the Sixth Circuit have recognized the Attorney General's authority.

In *Garner v. Lambert*, 530 F. Supp. 2d 953 (N.D. Ohio 2007)[4], the court analyzed an identical argument made by a firearms dealer whose license had been revoked. The plaintiff in *Garner* asserted that 18 U.S.C. 923(f)(2) mandated the imposition of a stay of the revocation until the district court fully adjudicated the petition for review. *Id.*, at 954. The plaintiff in *Garner* also referenced 18 U.S.C. § 925(b), and argued that Congress could not have intended to provide more protection to license holders charged with a crime than to those charged with non-criminal violations. *Id.*, at 955. The court rejected these arguments, determining that "…the stay established by [18 U.S.C.]§ 923(f)(2) applies only during the administrative hearing process…" and that it "contains no similar provision regarding a stay pending completion of judicial review." *Id.* The court also rejected the plaintiff's arguments related to 18 U.S.C. § 925(b). *Id.* The court cited to 27 C.F.R. § 478.78, and determined that ATF's Director of Industry Operations "…has discretion to authorize a stay of the license revocation while the decision is reviewed in court." *Id.* at 956. Ultimately, the court determined that 27 C.F.R. § 478.78 is supported by the requisite delegation

---

[4] This case was later disposed of on the merits pursuant to defendant's motion for summary judgment, a decision which was upheld by the Sixth Circuit. *Garner v. Lambert*, 345 F. App'x 66 (6th Cir. 2009).

of authority and its promulgation by ATF was a valid exercise of that authority, and the DIO's decision against extending the stay was a valid exercise of discretion. *Id.* at 957.

In this case, ATF DIO Kolb originally stayed the effective date of revocation from January 21, 2023 to March 20, 2023. After filing the instant lawsuit, Plaintiff, on March 9, 2023, requested an additional stay of the effective date of revocation. (*See* Doc. 10-2.) In a valid exercise of discretion pursuant to 27 C.F.R. § 478.78, DIO Kohl denied Plaintiff's request for an additional stay of the revocation on March 23, 2023. (*See* Doc. 10-3.) Like in *Garner*, this Court should reject the Plaintiff's arguments with respect to the agency's authority to terminate the stay of the revocation.

### B. Preliminary Injunction

This Court should deny Plaintiff's Motion for Preliminary Injunction because he is unable to meet his burden to establish a strong likelihood of success on the merits, and he additionally fails to allege irreparable injury. Moreover, the alleged harm to his employees is inevitable if the license revocation is upheld by this court, while the immediate alleged harm can be alleviated through other actions. Finally, the potential harm to the public and the public interest outweigh any incidental harm to the Plaintiff and his employees.

#### 1. Plaintiff Cannot Establish a Strong Likelihood of Success on the Merits

Pursuant to 18 U.S.C. § 923(f), the Attorney General may, after notice and opportunity for a hearing, revoke a license issued under the GCA. A license may be revoked if, among other things, the licensee has committed any willful violations of the GCA. *See* 18 U.S.C. § 923(e); 27 C.F.R. § 478.73. A showing of purposeful disregard of or plain indifference to the laws and regulations governing federal firearms dealers shows willfulness for the purposes of 18 U.S.C. § 923(d)(1)(C).

7

*See Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274, 1277 (11th Cir. 2005).

In his motion, Plaintiff focuses on whether or not his violations of 18 U.S.C. § 923 and 27 C.F.R. § 478.47 were "willful." In order to establish his likelihood of success on the merits, Plaintiff relies on an incomplete quote taken out of context from an unpublished 2010 decision by the United States District Court for the Eastern District of Wisconsin, saying "Congress did not intend for firearms dealers to lose their licenses for careless disregard, or because of indifference to the law, or even for negligent errors were made or repeated." (Doc. 9 at 3, ¶ 11.) Plaintiff attributed this statement to the case *Shawano Gun & Loan, LLC v. Hughes*, No. 09-C-150, 2010 WL 3732180, at *1 (E.D. Wisc. Sept. 20, 2010). While the court in *Shawano* did grant a stay of a firearms license revocation, this quote in Plaintiff's motion was neither a ruling nor even a view of the court, and was simply a summary of the appellant's view. The complete quote is as follows:

> Shawano's appeal is based on its view that Congress did not intend for firearms dealers to lose their licenses for careless disregard, or because of indifference to the law, or even for negligent errors were made or repeated.

*Shawano*, 2010 WL 3732180, at *1. The court did not offer this view because it is not consistent with the applicable case law, particularly within the United States Court of Appeals for the Sixth Circuit.

The pre-eminent Sixth Circuit case on what constitutes a "willful" violation of the GCA is *Appalachian Resources Development Corp. v. McCabe*, 387 F.3d 461 (6th Cir. 2004). In *Appalachian Resources*, the court considered the appellant's position that there was no willful violation of the GCA "because the sale was not done 'with the bad purpose to disobey or disregard the law.'" *Appalachian Resources*, 387 F.3d at 464 (quoting *Bryan v. United States*, 524 U.S. 184, 190 (1998)). The Court of Appeals agreed with the district court's rejection of appellant's position

8

and its finding that appellant willfully violated the GCA based on knowledge of the obligation and repeated violations of that obligation. *Id*.

According to the Court of Appeals in *Appalachian Resources*,

> [t]he majority of circuits, including the Sixth Circuit, have consistently held that where a licensee understands his or her legal obligations under the GCA, yet fails to abide by these obligations, his or her license can be denied or revoked on the basis that the dealer "willfully" violated the GCA.

*Id*. (citing *Al's Jewelry & Loan, Inc. v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, No. 95-1765, 1996 WL 683528 at *3-*4 (6th Cir. Nov. 22, 1996)(denial of license affirmed upon finding petitioner willfully violated GCA because he knew of record-keeping obligations yet failed to abide by them); *Perri v. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 637 F.2d 1332, 1336 (9th Cir. 1981)("To establish grounds for revocation of a license, the government must demonstrate a willful violation of the Act. That is established when a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them.")(citing *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979)); *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir.1980)("The [GCA] does not require bad purpose or evil motive before a license may be revoked or a renewal application denied. The Secretary need only prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements.")(quotation marks omitted); *Prino v. Simon,* 606 F.2d 449, 451 (4th Cir.1979)(Under the GCA, in a civil context, "[a] conscious, intentional, deliberate, voluntary decision properly is described as willful, regardless of venal motive.") (quotation marks omitted)). It has also been recognized that "…a single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license." *Appalachian Resources*, 387 F.3d at 464. (internal citations omitted).

9

Here, the Plaintiff's undisputed violations of the GCA were "willful" pursuant to the standard set forth in *Appalachian Resources*. Plaintiff had been a licensed firearms dealer since 2011. (Doc. 1 at ¶ 5.) The "length of time an individual has been licensed" is "relevant to willfulness." *CEW Props. Inc. v. U.S. Dept of Justice*, 979 F.3d 1271, 1281 (10th Cir. 2020); citing *Pinions Enterprises, Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1317 (S.D. Ala. June 3, 2005) (petitioner's "long history as a license holder" suggests knowledge of legal requirements); *see also Nationwide Jewelry & Pawn v. ATF*, 455 F. Supp. 2d 1379, 1385 (M.D. Ga. Oct. 12, 2006) (a licensee's long tenure considered as evidence of willfulness). Plaintiff had previously been cited in 2017 with violating 27 C.F.R. § 478.102, had attended a warning conference, and had been warned that any future violations could be viewed as willful and may result in revocation of his license. (Doc. 10-1 at 6.) Despite his status as an experienced federal firearms licensee and his knowledge of the GCA requirements, Plaintiff was cited in 2022 for both repeat violations and new violations of the GCA.

At the time of the violations at issue here, Plaintiff had both knowledge of his obligations and a history of previous violations, which meet the "willful" standard. *Appalachian Resources*, 387 F.3d at 464. Plaintiff has cited no case law in the Sixth Circuit or any other circuit supporting his definition of what constitutes a "willful" violation of the GCA. As a result, Plaintiff cannot establish a strong likelihood of success on the merits to support a preliminary injunction.

Furthermore, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). *See also Systematic Recycling, LLC v. City of Detroit*, 685 F. Supp. 2d 663, 671 (E.D. Mich. 2010) ("Of all the factors for determining the propriety of a preliminary injunction, the most important is the plaintiff's likelihood of success on the merits.").

10

## 2. **Irreparable Injury**

The lack of a strong likelihood of success on the merits should end the inquiry for preliminary injunction purposes. However, the harm alleged by Plaintiff is also not irreparable.

While no one factor is determinative, *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001), and "[d]espite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the district court, equity has traditionally required such irreparable harm before an interlocutory injunction may be issued." *Friendship Materials, Inc.*, 679 F.2d 100, 103 (6th Cir. 1982). In fact, "[t]he failure to show irreparable harm, by itself, can justify the denial of preliminary injunctive relief without consideration of the other three factors." *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 942 (W.D. Mich. 2009).

If this court upholds the revocation, which the decision in *Appalachian Resources* supports, then the prospective harm alleged by the Plaintiff is inevitable whether or not a preliminary injunction is issued. Further, Plaintiff is entitled to arrange for another federal firearms licensee to purchase the inventory (and other assets) of the business, or consign the inventory to another federal firearms licensee to sell on consignment or at auction, which could alleviate the alleged immediate harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (internal quotation marks omitted).

The irreparable-harm factor considers "whether the movant would otherwise suffer irreparable injury" if an injunction is not issued. *Leary*, 228 F.3d at 736 (emphasis added). It does not focus on whether anyone else might suffer irreparable harm if an injunction is not issued.

11

Therefore, Plaintiff cannot rely on the harm that others may be experiencing to establish irreparable harm in his case.

For the foregoing reasons, Plaintiff cannot establish irreparable harm. As a result, this factor weighs against issuing a preliminary injunction.

### 3. Harm to Others and Public Interest

"Because Plaintiff has not carried [his] burden as to the likelihood of success on the merits and irreparable injury factors, the two most important factors, [the] two other factors need not be addressed." *Fish and Chicken Land, Inc.*, 2013 WL 1729357, at *2. However, if the Court considers them, the last two factors do not justify an injunction.

With respect to the harm to Plaintiff's employees, the prospective harm of the impact on Plaintiff's employees if he is no longer licensed to sell firearms is inevitable if this court upholds the revocation. As discussed previously, Plaintiff can alleviate this alleged harm by arranging for another federal firearms licensee to purchase the inventory or consign the inventory to another federal firearms licensee to sell on consignment or at auction. Further, the potential harm to the public by granting the preliminary injunction in light of Plaintiff's repeated violations of the GCA would outweigh any incidental harm to Plaintiff or his employees.

Plaintiff's only argument with respect to the public interest is based on his incorrect understanding of ATF's authority under 18 U.S.C. § 923(f), as set forth in *Garner v. Lambert*, 530 F.Supp.2d 953 (N.D. Ohio 2007). Plaintiff's repeated violations of the GCA include the transfer of a firearm to a purchaser that Plaintiff knew or had reasonable cause to believe was underage, transfer of a firearm to a purchaser without completing a background check which was later denied due to the purchaser's status as a person involuntarily committed to a mental institution or

adjudicated as a mental defective under 18 U.S.C. § 922(g)(4), the failure to report multiple sales, and multiple false statements made in required records. (Exhibit 1 at pp. 4-9.)

The purpose of the GCA is to protect the public, and a failure of a licensee to adhere to it and its associated regulations achieves the opposite result. *See Shawano*, 2010 WL 332180 at *6 ("The overarching purpose of the GCA is to protect the public by ensuring that federally licensed gun dealers carefully follow the rules. The point is not to punish firearms dealers for violations, but rather to protect the public from firearms ending up in the wrong hands, which can easily happen where a licensed dealer repeatedly demonstrates plain indifference to the GCA requirements."); *Best Loan v. Herbert*, 601 F.Supp.2d 749, 755 (E.D.Va.2009) ("Improper record keeping is a serious violation."); *Procaccio v. Lambert*, No. 5:05–MC–0083, 2006 WL 2090166, at *5 (N.D.Ohio July 25, 2006) ("ATF requires diligence in all aspects of transferring firearms, including tracking mechanisms. The Petitioner is not empowered to pass judgment on the importance of the regulated procedures, or [sic] is he situated to deny that their purpose is, at least in part, to enable government and law enforcement officials to protect the public against violent crime.").

Not only does the public interest oppose the sale of firearms to underage persons and persons either involuntarily committed to a mental institution or adjudicated as a mental defective, but the public interest is also harmed by a failure to report firearms sales accurately and completely. ATF and other law enforcement agencies rely on accurate federal firearms license transaction records to trace firearms involved in crimes and to apprehend criminals. *See Abramski v. United States*, 572 U.S. 169, 182-83 (2014) (information contained in gun dealer's records establishes information about a gun buyer's identity and that helps fight serious crime); *see also Nat'l Shooting Sports Found. v. Jones*, 716 F.3d 200, 204-05 (D.C. Cir. 2013) (explaining ATF relies on accurate

federal firearms license records to link suspects in criminal investigations and identify potential firearms traffickers).

Based on the willful violations of the GCA committed by Plaintiff and the potential harm to the public resulting therefrom, as well as the potential harm to law enforcement associated with these violations, the public interest does not support a preliminary injunction with respect to the revocation of Plaintiff's federal firearms license.

## IV.

## **CONCLUSION**

Based on the foregoing, the Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

FRANCIS M. HAMILTON III
United States Attorney

By: *s/ J. Spencer Fair*
J. Spencer Fair (BPR #028069)
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, TN 37902
Spencer.Fair@usdoj.gov
(865) 545-4167