UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TERRY POSEY d/b/a POSEY GUN AND PAWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      No. 1:23-CV-00051-JRG-CHS |
| | ) |
| MERRICK GARLAND, Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; and THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction [Doc. 9] and Defendants' Response to Plaintiff's Motion for Preliminary Injunction [Doc. 10]. For the reasons herein, the Court will deny Plaintiff's motion.

## I.    PROCEDURAL HISTORY

Plaintiff Terry Posey, doing business as Posey Gun and Pawn, brings this suit against Defendants United States Attorney General Merrick Garland, the United States Department of Justice, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Prior to filing this suit, Mr. Posey was a licensed firearms dealer, and under 18 U.S.C. § 923(f), he now seeks judicial review of the ATF's decision to revoke his federal firearms license, [Compl., Doc. 1, at 1, 5–6],[1] as well as a preliminary injunction that enjoins the revocation of his license, [Mot. for Prelim. Inj. at 3–5].

---

[1] Mr. Posey, in his complaint, seeks a determination that the ATF's decision to revoke his license was arbitrary and capricious, [Compl. at 6], but the applicable statute, 18 U.S.C. § 923(f), authorizes the Court to conduct

Although Mr. Posey filed his motion for a preliminary injunction on April 12, 2023, the Court has not addressed his motion to date because he failed to file proof of service as to the ATF until July 5, 2023. *See* [Aff., Doc. 20]. On April 26, 2023—at which time Mr. Posey had forty-two days remaining to execute service under Federal Rule of Civil Procedure 4(m)—the Court entered an order in which it notified Mr. Posey that it could not act on his motion for preliminary injunction until he properly served the ATF and filed proof of service in the record. [Order, Doc. 11, at 1–3]; *see NAACP Special Contribution Fund v. Atkins*, Nos. 87-3366, 87-3673, 1988 WL 81504, at *5 (6th Cir. June 13, 1988) (vacating the district court's injunction after ruling that it "acted without having obtained *in personam* jurisdiction" over one of the parties); *see also R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 958 (4th Cir. 1999) (vacating the district court's injunction "for lack of personal jurisdiction" because the plaintiff never effected service of process); *Easterling v. Rice*, Civil No. 2:19-469JMH, 2019 WL 1338712, at 1* (S.D. Ohio Mar. 25, 2019) ("Because none of the defendants had been properly served with process, the Court lacks personal jurisdiction over them and cannot grant the injunctive relief [that the plaintiff] seeks." (citations omitted)); *Schuh v. Mich. Dep't of Corrs.*, No. 1:09-cv-982, 2010 WL 3648876, at *2 (W.D. Mich. July 26, 2010) ("When a preliminary injunction is sought under Rule 65(a), service of the summons and the complaint is required." (citations omitted)).

Despite the Court's entry of this order, Mr. Posey failed to file proof of service in the record by Rule 4(m)'s deadline, prompting the Court, on June 23, 2023, to enter another order, in which it required Mr. Posey to show good cause for failing to serve the ATF. [Second Order,

---

a de novo review, *see* 18 U.S.C. § 923(f)(3) ("If after a hearing held under paragraph (2) the Attorney General decides not to reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a *de novo judicial review* of such denial or revocation." (emphasis added)).

Doc. 17, at 1–3]. The Court later discharged this order, and on July 5, 2023, Mr. Posey finally filed proof of service as to the ATF. [Aff., Doc. 20]. About two weeks later, the Court ordered the parties to jointly address whether the Court could resolve Mr. Posey's motion for preliminary injunction based on the ATF's administrative record alone or whether an evidentiary hearing was necessary. [Third Order, Doc. 21, at 1]; *see Farnsworth v. Nationstar Mortg.*, LLC, 569 F. App'x 421, 427 (6th Cir. 2014) ("[D]istrict courts should conduct hearings before ruling on motions for a preliminary injunction 'where facts are bitterly contested,' but [are] not required [to hold] a hearing when no material facts are in dispute." (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007))). The parties agreed that a hearing was unnecessary, [Joint Resp. Doc. 23, at 1], and on July 26, 2023, they filed the administrative record for the Court's consideration. The Court now issues this memorandum opinion.

## II. BACKGROUND

The proprietor of Posey Gun and Pawn in Cleveland, Tennessee, Mr. Posey received a license in 2011 from the ATF to operate as a licensed firearms dealer. *See* [Admin. R.. Doc. 22-1, at 138:22–24]; *see* [Admin. R., Gov't Ex. 1, Doc. 22-1, at 301].[2] When he received his license in 2011, the ATF conducted a "qualification inspection" of his premises, i.e., Posey Gun and Pawn. [Admin. R. at 138:25, 139:1–8]. During a qualification inspection, the ATF's customary practice is to review relevant record-keeping laws and regulations with the new licensee. [*Id.* at 139:1–8]. As a licensed firearms dealer, Mr. Posey had a legal obligation to comply with the record-keeping requirements under the Gun Control Act, 18 U.S.C. § 921 *et seq.*, and with the record-keeping requirements under 27 C.F.R. §§ 478.121–478.134. *See* 18 U.S.C. § 923(g)(1)(A)

---

[2] Pincites to the record refer to electronic page numbers.

(providing that "[e]ach . . . licensed dealer shall maintain such records of . . . shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe"). Posey Gun and Pawn was subject to inspections, known as "compliance inspections," [Admin. R. at 133:9–18], to ensure compliance with these record-keeping requirements, 18 U.S.C. § 923(g)(B)–(C). A compliance inspection typically involves a review of record-keeping transactions and a review of inventory. [Admin. R. at 133:9–18].

In 2017, Patricia Armstrong, an ATF investigator, performed a compliance inspection of Posey Gun and Pawn and found thirteen regulatory violations, including a false statement or representation made on records submitted to the ATF, failure to adhere to background-check requirements, employment of a person prohibited from lawfully possessing a firearm, failure to complete and submit sales forms, and failure to properly complete ATF Form 4473.[3] [*Id.* at 139:9–25, 140:1–10; Admin. R., Gov't Ex. 9 at 341–50; Final Notice of Revocation, Doc. 10-1, at 3].[4] Some of the violations occurred multiple times and in some instances dozens of times. *See* [Admin. R., Gov't Ex. 9 at 341–50]. Mr. Posey received a copy of the report of violations during the inspection and again by mail, *see* [*id.* at 351], and Ms. Armstrong later conducted a "warning conference" with him, [Admin. R. at 140:6–13]. A warning conference is a formal, in-person meeting between the licensee and the ATF investigator and staff, and it is meant not only to ensure the licensee "understands what's expected from the complaint's point of view" but also

---

[3] Form 4473 is a transactional record that licensees must keep "to verify that all over-the-counter transactions involve qualified purchasers." *Armalite, Inc. v. Lambert*, 544 F.3d 644, 645 (6th Cir. 2008) (citation omitted).

[4] "In a proceeding conducted under [18 U.S.C. § 923(f)(3)], the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative hearing][.]" 18 U.S.C. § 923(f)(3).

4

to "give[] the licensee a chance to explain what happened and . . . explain what measures are going to be taken to prevent future repeat violations." [*Id.* at 140:24–25, 141:1–5].

At the warning conference, Mr. Posey expressed his understanding of the regulations at issue and of how his conduct had violated those regulations. He said, for instance, that "he now understood the requirements for [completing and submitting ATF Form 3310.4] for a multiple handgun sale," that "he knows [he] needs to do a better job of reviewing the form (ATF Form 4473)," that "now it was his intention to make sure every form was double checked before it is filed," and that "he understands the firearms must be recorded on the actual date of acquisition." [Admin. R., Gov't Ex. 9 at 353, 354, 356]. He also signed a document titled "Acknowledgement of Federal Firearms Regulations," [*id.* at 359–60], which contains columns referring to the regulations at issue and Mr. Posey's initials next to each of those regulations, [*id.*]. According to the ATF, this document means that "Mr. Posey was explained those regulations that all are initialed by Mr. Posey here, and that he understood what was expected." [Adm. R. at 142:7–13]. After the warning conference, the ATF mailed a letter to Mr. Posey, alerting him that he "may anticipate further inspections to ensure [his] compliance" and that "future violations, repeat or otherwise, could be viewed as willful and may result in the revocation of [his] license." [*Id.* at 356].

In 2019, Kevin Levesque, an ATF investigator, performed a follow-up compliance inspection of Posey Gun and Pawn and found thirteen statutory and regulatory violations, some of which were repeat violations. [Admin. R. at 137:5–11, 188:24–25, 189:1–2; Admin. R., Gov't Ex. 6 at 314–26]. The violations included a false statement or representation made on records submitted to the ATF; failure to report sales of firearms; unlawful sale or delivery of a firearm to an underage person; failure to adhere to background-check requirements; failure to maintain

5

an accurate, complete, and timely acquisition and disposition record of firearms; and a failure to properly complete Form 4473. [Admin. R., Gov't Ex. 6 at 325–26]. Some of these violations occurred multiple times and in some instances dozens of times. [*Id.*]. For instance, Investigator Levesque recorded 383 total violations related to the completion of Form 4473. [*Id.*].

In 2022, Mr. Posey received notice of the ATF's intent to revoke or suspend his license. [Admin. R., Gov't Ex. 2 at 302–06; Admin. R., Gov't Ex. 3 at 309]. In that notice, the ATF identified seventeen violations of the Gun Control Act and the Code of Federal Regulations and alleged that those violations were willful. [Admin. R., Gov't Ex. 2 at 303–04].[5] Mr. Posey requested and received a hearing, at which counsel represented him. The hearing officer found that Mr. Posey had committed each of the alleged violations and that he did so willfully.[6] [Final Notice of Revocation at 4–10]. The hearing officer stated: "Despite ATF's numerous attempts to educate licensee, impress upon [Mr. Posey] the importance of compliance, and instruct on the need for accurate record keeping, [he] has continued to be indifferent to [his] obligations under the GCA." [*Id.* at 10]. Finding Mr. Posey's proclivity for making false statements in his records to be "particularly egregious" because it required intentional or knowing conduct,[7] the hearing

---

[5] Although Mr. Posey had allegedly committed many more violations, *see* [Admin. R., Gov't Ex. 6 at 315–26], the ATF elected to move forward with only the most serious violations, which often include repeat violations, [Admin. R. at 188:15–23].

[6] Under the Gun Control Act, "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has *willfully* violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter[.]" 18 U.S.C. § 923(e) (emphasis added).

[7] At the hearing, Investigator Levesque explained that, during his follow-up compliance check in 2019, he discovered that two Glock 40 pistols were missing from Mr. Posey's inventory at Posey Gun and Pawn, and when he inquired about what had happened to them, Mr. Posey presented him with ATF Form 4473 and ATF Form 3310.4, in which Mr. Posey had written that the Glocks had been transferred to a certain individual. But when Investigator Levesque contacted this individual, he stated that he did not purchase the two Glocks 40s and did not even know, in terms of caliber, what a Glock 40 was. [Admin. R. at 178:22–25, 179:1–25, 180:1–25, 181:1–25, 182:1–25, 183:1–25, 184:1–25, 185:1–16].

6

officer concluded that Mr. Posey's "history of failing to comply with regulations clearly meets the legal standard for plain indifference of the record keeping requirements," and he therefore revoked Mr. Posey's license, [*id.*], with an effective date of January 21, 2023, *see* [ATF Letter, Doc. 10-3, at 1].

Mr. Posey, through his attorney, requested a stay of the effective date through March 20, 2023, and the ATF granted his request. [*Id.*]. Although Mr. Posey, through his attorney, later requested a second stay, the ATF denied his request because this Court had jurisdiction over his case by that time. [*Id.*]. Mr. Posey now challenges the ATF's decision to revoke his license, claiming that "[e]ach [of the hearing officer's] finding[s] w[ere] incorrect" because "the ATF failed to show [he] in any way acted willfully." [Compl. at 4]. He moves the Court to stay the revocation of his license until this case's resolution, [Mot. Prelim. Inj. at 2–3], and "[i]n the alternative," he moves for a preliminary injunction, [*id.* at 3].

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). When considering whether to issue a preliminary injunction, the Court considers four factors: (1) whether the movant has shown a strong likelihood of success on the merits of the controversy, (2) whether the movant is likely to suffer irreparable harm without an injunction, (3) whether an injunction would cause substantial harm to others, and (4) whether an injunction would serve the public interest. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

A preliminary injunction, however, is an "extraordinary remedy," and the movant has the "burden of proving that the circumstances clearly demand it." *Id.* (citation omitted). "[T]he

proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion," *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (citations omitted), because on a motion for a preliminary injunction, the movant has a "burden of persuasion as to all of the four prerequisites," whereas a plaintiff on a motion summary judgment has only the task of creating a genuine issue of material fact for a jury's consideration. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Even so, "[a] party . . . is not required to prove his case in full at a preliminary-injunction hearing." *Camenisch*, 451 U.S. at 395.

The four factors generally ought "to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary*, 228 F.3d at 736 (citations omitted). When the Court, however, is able to determine the propriety of a preliminary injunction by relying on fewer than all four factors, it may do so. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ("The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" (quotation omitted)); *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 315 (6th Cir. 1998) (affirming the district court's issuance of a preliminary injunction based on the district court's conclusion that the plaintiff showed a likelihood of success on the merits).

## IV. ANALYSIS

In moving the Court to stay this case, Mr. Posey relies on § 923(f)(2), which, in pertinent part, states:

> If the Attorney General denies an application for, or revokes, a license, he shall, upon request by the aggrieved party, promptly hold a hearing to review his denial or revocation. In the case of a revocation of a license, the Attorney General shall upon the request of the holder of the license *stay the effective date of the revocation*.

8

18 U.S.C. § 923(f)(2) (emphasis added). Again, the ATF granted a stay of the revocation of Mr. Posey's license through March 20, 2023, at Mr. Posey's request, but the ATF declined to extend the stay once Mr. Posey filed suit in this Court. Mr. Posey asserts that "[n]o provision of § 923(f) authorizes the Attorney General to terminate the stay granted under § 923(f)(2) or to implement the revocation." [Mot. Prelim. Inj. At 2]. To support this assertion, Mr. Posey cites § 923(f)(3), which states:

> If after a hearing held under paragraph (2) the Attorney General decides not to reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 923(f)(3).

In Mr. Posey's view, § 923(f)(3) "simply requires the Attorney General to give 'notice' of his decision to the licensee, which begins the 60-day period for seeking judicial review." [Mot. for Prelim. Inj. at 2]. He argues that "[h]ad Congress intended that the Attorney General's giving notice of his decision to the licensee concomitantly authorized the Attorney General to terminate the stay, Congress would have included language to that effect." [*Id.*]. But "congressional silence provides [but] a squishy reed upon which to base congressional intent." *Downhour v. Somani*, 85 F.3d 261, 269 (6th Cir. 1996) (alteration in original) (quoting *Med. Soc'y of State of N.Y. v. Cuomo*, 976 F.2d 812, 818 (2d Cir. 1992)); *see also Zuber v. Allen*, 396 U.S. 168, 185 (1969) (stating that "[l]egislative silence is a poor beacon to follow"). Indeed, the Supreme Court has

"frequently cautioned that '[i]t is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law.'" *United States v. Wells*, 519 U.S. 482, 496 (1997) (alteration in original) (quotation omitted).

Mr. Posey, maybe for this reason, augments his argument by contending that Congress, in its silence, must have intended to foreclose the ATF from terminating a stay because § 923(f) would otherwise lead to "an absurd result." [Mot. for Prelim. Inj. at 2]. "If the language of [a] statute is clear, the court applies the statute as written," but when "'the language is ambiguous or leads to an absurd result,' courts may rely on extra-textual sources, such as legislative history or administrative guidance, to interpret a statute." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 253 (6th Cir. 2020) (quotations omitted). Mr. Posey, though, does not rely on legislative history or administrative guidance to support his argument that § 923(f)'s language, as Congress wrote it, would lead to an absurd result. Instead, he relies on a different statutory provision altogether, 18 U.S.C. § 925(b), which states:

> A licensed importer, licensed manufacturer, licensed dealer, or licensed collector who is indicted for a crime punishable by imprisonment for a term exceeding one year, may, notwithstanding any other provision of this chapter, continue operation pursuant to his existing license (if prior to the expiration of the term of the existing license timely application is made for a new license) during the term of such indictment and until any conviction pursuant to the indictment becomes final.

18 U.S.C. § 925(b). Section 925(b), by its plain language, allows a licensee to continue to deal firearms during the pendency of a felony criminal case and until the occurrence of a final conviction. Comparing § 925(b)'s language to § 923(f)(2)'s language, Mr. Posey asserts that if "§ 923(f)(2) does not authorize a licensee's continuance of operations pending judicial review, the licensee would have greater protection if he is the subject of a criminal prosecution than if he is the subject of a license revocation." [Mot. for Prelim. Inj. at 2]. He argues that "[t]his would be an absurd result that Congress did not intend." [*Id.*].

10

Even if the Court were to rule that § 923(f)(2)'s language is unclear and were to turn to § 925(b) for interpretative guidance, as Mr. Posey urges it to, Mr. Posey's argument would fail for at least three reasons. First, as the ATF points out, Mr. Posey musters no case law to support his argument that the juxtaposition of § 925(b)'s language with § 923(f)(2)'s language produces the absurd result he complains of. Instead, he "simply asserts that such authorization appears at odds with the language of [§ 923(f)(2)] as well as perceived congressional intent." [ATF's Resp. at 6]. Mr. Posey's failure to cite case law is fatal to his argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* E.D. Tenn. L.R. 7.1(b) (stating that a party's brief "shall include . . . legal grounds which justify the ruling sought from the Court").

Second, Mr. Posey's argument is not novel, and although neither the Sixth Circuit nor any other circuit court of appeals has addressed it, *see Garner v. Lambert*, 345 F. App'x 66, 74 (6th Cir. 2009) (declining to decide whether § 923(f)(2) requires a stay pending judicial review after affirming revocation of the appellant's license, at which point the issue of a stay became moot), some district courts have addressed it and have rejected it. The ATF relies on *Garner v. Lambert*, 530 F. Supp. 2d 953 (N.D. Ohio 2008), in which the district court rejected the same argument that Mr. Posey raises here. *See id.* at 955 (concluding that "the stay provided for by § 923(f)(2) applies only during the administrative review process" and the plaintiff's "argument regarding § 925(b) does nothing to alter this conclusion"); *see also Mountaineer Gun Sales, LLC v. Bureau of ATF*, No. 1:11CV200, 2012 WL 194079, at *4–5 (N.D. W. Va. Jan. 23, 2012) ("[The plaintiff] argues that, in light of § 925(b), which imposes a mandatory stay of revocation pending

11

criminal prosecution, Congress must have intended to afford similar protection to a licensee facing only civil violations under § 923. The Court disagrees with [the plaintiff's] interpretation of the statutory scheme. The stay imposed by § 923(f)(2) applies only during the administrative hearing process and does not require a stay now, after ATF has already issued its final notice of revocation."); *RMS, Inc. v. Herbert*, No. WMN-05-847, 2006 WL 5376120, at *2 (D. Md. Mar. 15, 2006) ("[W]hile the language of § 923(f) does not provide a definitive answer as to when a stay of a revocation should be lifted, § 923(e) and ATF regulations at 27 C.F.R. § 478.78 make clear that ATF can revoke the license after a hearing has been held and a Notice of Revocation has been served on the licensee."); *see also* 27 C.F.R. § 478.78 ("[W]hen the Director finds that justice so requires, he *may* postpone the effective date of . . . revocation of a license . . . pending judicial review." (emphasis added)). This Court agrees with the reasoning of these district courts.

Third, the fact that § 925(b) affords an indicted licensee greater protection by permitting him to continue operations during the pendency of a felony criminal case, whereas § 923(f)(2) does not allow an unindicted licensee to continue operations during the pendency of a civil case, is hardly an absurdity. The United States Constitution, federal statutes, and the common law all have *long* provided criminal defendants with greater protections than civil litigants—from the grand jury to the heightened burden of proof that the government carries at trial—because their liberty is at stake. *See Anderson v. Sheppard*, 856 F.2d 741, 748 (6th Cir. 1988) ("[A] criminal defendant faced with a potential loss of his personal liberty has much more at stake than a civil litigant asserting or contesting a claim for damages, and for this reason the law affords greater protection to the criminal defendant's rights." (alteration added) (quotation omitted))).

The Fifth Amendment's privilege against self-incrimination is another long-standing safeguard that protects criminal defendants' liberty interests, and it can play a pivotal role in

12

parallel criminal and civil proceedings. A pending criminal prosecution can serve as grounds for postponing a civil case that involves similar facts because "[t]estimony obtained in civil suits, or before administrative or legislative committees, could [absent a grant of immunity] prove so incriminating that a person compelled to give such testimony might readily be convicted on the basis of those disclosures in a subsequent criminal proceeding." *Chavez v. Martinez*, 538 U.S. 760, 771 (2003) (first alteration added) (quotation omitted); *cf.* 18 U.S.C. § 981(g)(2)(A) ("Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that . . . the claimant is the subject of a related criminal investigation or case[.]"). Consider, for instance, the situation of a licensee who loses his license upon receiving a revocation notice from the ATF and who is simultaneously under a criminal investigation or an indictment. If § 925(b) were not to provide that licensee with the option of remaining in operation during the pending criminal investigation or prosecution, he would have to initiate a judicial challenge to the revocation within sixty days—in a civil case whose facts could, conceivably, run parallel to the pending criminal case. In other words, the licensee would have to risk moving forward with the civil case and possibly offering testimony or other sworn statements that could incriminate him in the pending criminal case.

So § 925(b) hardly produces an absurd result by providing this type of licensee with the option of continuing operations and withholding his civil suit until a conviction becomes final. Rather, it produces a result that preserves a criminal defendant's Fifth-Amendment privilege against self-incrimination—a result that is, incidentally, consistent with the Supreme Court's precedent. *See Chavez*, 538 U.S. at 701 ("In the Fifth Amendment context, we have created prophylactic rules designed to safeguard the core constitutional right protected by the Self-Incrimination Clause. Among these rules is an evidentiary privilege that protects witnesses from

being forced to give incriminating testimony, even in noncriminal cases[.]" (citations omitted)). And likewise, the fact that § 923(f)(2) does not provide unindicted licensees—i.e., strictly would-be civil litigants who are not facing criminal prosecution—with the same protection against self-incrimination does not create an absurd result. *See Doe v. United States*, 487 U.S. 201, 212 (1988) (stating that the privilege against self-incrimination "may be asserted only to resist compelled explicit or implicit disclosures of *incriminating* information" (emphasis added)).

In sum, Mr. Posey's argument—i.e., that § 923(f)(2) produces an absurd result because it affords "the licensee . . . greater protection if he is the subject of a criminal prosecution than if he is the subject of a license revocation," [Mot. for Prelim. Inj. at 2]—is without merit, for the three reasons that the Court has identified. The Court will now go on to address his alternative argument that he is entitled to injunctive relief. Again, to obtain a preliminary injunction—an extraordinary remedy—he must establish (1) a strong likelihood of success on the merits of the case, (2) a likelihood that he will suffer irreparable harm if he does not receive an injunction, (3) an injunction would not cause substantial harm to others, and (4) an injunction would serve the public interest. *Overstreet*, 305 F.3d at 573.

### A. Strong Likelihood of Success on the Merits

Again, Mr. Posey brings suit under § 923(f)(3), seeking a de novo judicial review of the ATF's decision to revoke his license.[8] Under § 923(e), "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has *willfully* violated *any* provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter[.]" 18 U.S.C. § 923(e) (emphasis added). Based on this

---

[8] A de novo review requires the Court "to give fresh consideration" to the issues before it. *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quotation omitted). In doing so, it "cannot simply 'concur' in the [hearing officer's] findings," *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005); instead, it must reach "the ultimate determination of the matter" through its own judicial discretion, *Raddatz*, 447 U.S. at 675–66.

14

statute's plain language, "a single willful violation of the GCA, or of its rules and regulations, suffices to revoke a firearms license." *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008) (citation omitted). A licensee willfully violates the Gun Control Act or an applicable rule or regulation when he understands his legal obligations under these laws yet intentionally or knowingly violates them or acts with plain indifference to them, i.e., recklessly violates them. *Id*.

Mr. Posey, in contending that he has a strong likelihood of succeeding on the merits of his claim under § 923(f)(3), marshals only a single-sentence argument: "Plaintiff is likely to succeed on this issue as a matter of law because 'Congress did not intend for firearms dealers to lose their license for careless disregard, or because of indifference to the law, or even for negligent errors . . . made or repeated.'" [Mot. for Prelim. Inj. at 3 (quoting *Shawano Gun & Loan, LLC v. Hughes*, No. 09-C-150, 2010 WL 3732180, at *1 (E.D. Wis. Sept. 20, 2010))]. Mr. Posey also nonchalantly directs the Court to the allegations in his complaint. *See* [*id.* (stating "*see* Comp.")]. In the complaint, he alleges that each of the hearing officer's "finding[s] w[ere] incorrect" because "the ATF failed to show [he] acted willfully," [Compl. at 4], and he attributes the alleged violations at issue to "an honest mistake," "an oversight," "unaware[ness]," and "[a] negligent oversight," [*id.* at 4–5]. He contends that the hearing officer "offered no evidence that any of these violations were willful other than that [he] 'was aware of the requirements in the regulation'" and that "[b]eing aware of the requirements does not qualify as willfully violating the law." [*Id.* at 5].

While the second half of this contention is an accurate statement of the law, the first half is an inaccurate account of the record, which wholly supports the hearing officer's conclusion that Mr. Posey willfully committed at least some of the alleged violations. The ATF correctly

15

argues that "[a]t the time of the violations at issue here, Plaintiff had both knowledge of his obligations and a history of previous violations, which meet the 'willful' standard." [ATF's Resp. at 10]. Indeed, the record is flush with evidence demonstrating that Mr. Posey, before committing the alleged violations at issue, understood his legal obligations under the relevant provisions of the Gun Control Act and the Code of Federal Regulations. That evidence includes:

- The ATF's qualification inspection in 2011, at which the ATF's usual practice is to review the relevant record-keeping laws and regulations with the new licensee. [Admin. R. at 139:1–8];

- The ATF's warning conference in 2017, at which Mr. Posey stated that "he now understood the requirements for [completing and submitting ATF Form 3310.4] for a multiple handgun sale," that "he knows [he] needs to do a better job of reviewing the form (ATF Form 4473)," that "now it was his intention to make sure every form was double checked before it is filed," and that "he understands the firearms must be recorded on the actual date of acquisition." [Admin. R., Gov't Ex. 8 at 353, 354, 356]; and

- Mr. Posey's signature and initials on the "Acknowledgement of Federal Firearms Regulations," [*id.* at 359–60], which contains columns referring to the regulations at issue and Mr. Posey's initials next to each of those regulations, [*id.*].

And yet, Mr. Posey, despite his complete awareness and understanding of his legal obligations, committed a slew of additional violations in 2019, some of which were recurring violations from 2017.

Mr. Posey's history of violations are sufficient to establish his plain indifference to his known legal obligations. *See Armalite*, 544 F.3d at 649–50 (stating that "the essence" of plain indifference to known legal obligations "lies in [a party's] consistent failure to ensure full and accurate" compliance with the law). Mr. Posey's violations persisted—and in fact increased— even after the ATF, in 2017, had apprised him in detail of the violations, impressed upon him the importance of compliance with the law, instructed him on how to take corrective actions, and warned him that it could view future violations as willful and revoke his license. *See Garner*,

16

345 F. App'x at 73–74 ("[W]hen such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements." (quoting *RSM, Inc. v. Herbert*, 466 F.3d 316, 322 (4th Cir. 2006))).

In an attempt to downplay his violations as unwilful, Mr. Posey uses words like "honest mistake," "unaware," "oversight," and "negligent oversight" to explain away more or less every one of the violations, [Compl. at 4–5], and while "human error" or "[a] simple mistake does not on its own constitute willfulness," "a *series* of purported mistakes may evince a tolerance for errors and thus a plain indifference to the applicable statutory and regulatory requirements." *Garner*, 345 F. App'x at 73 (emphasis added) (citation omitted). In one instance, Mr. Posey blames the improper completion of certain forms on an employee, whom, he claims, filled out the forms without his knowledge, [Compl. at 5], but in 2017, during the warning conference, Mr. Posey said that "he knows [he] needs to do a better job of reviewing the form (ATF Form 4473)" and "now it was his intention to make sure *every* form was double checked before it is filed," [Admin. R. at 354 (emphasis added)].

With these statements, he appeared to acknowledge that he was legally responsible for his employees' actions, *see Bankston v. Then*, 615 F.3d 1364, 1368–69 (11th Cir. 2010) (stating that a licensee is legally responsible for the acts of his employees); *cf. Armalite*, 544 F.3d at 650 ("Although [the licensee] knew that its employees were not fully and accurately completing the forms, [it] chose not to take steps to ensure future compliance."), yet he failed to ensure that his employees comported themselves with the law, and this failure therefore resonates as willful rather than negligent. And although he emphasizes that he eventually terminated the employee who was at fault, [Compl. at 5], his remedial actions are inconsequential to an analysis of

17

willfulness, *see Procaccio v. Lambert*, 233 F. App'x 554, 559 (6th Cir. 2007) ("[The licensee's] argument that his post-inspection efforts are probative of his willfulness is without merit. What matter are his actions at the time the violations occurred." (citations omitted)). Mr. Posey is therefore not strongly likely, or even at all likely, to succeed on the merits of his claim.

### B. Irreparable Harm

"A showing of 'probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'" *Lucero v. Detroit Pub. Schs.,* 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001) (quoting *Reuters Ltd. v. United Press Int'l., Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)); *see D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (stating that "even the strongest showing" on the other factors cannot justify a preliminary injunction without irreparable harm). Mr. Posey must show that he is "likely" to suffer irreparable harm from the ATF's decision to shutter Posey Gun and Pawn, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), but the threat of irreparable harm has to be more than merely "speculative or theoretical," *Sumner Cty. Schs.*, 942 F.3d at 327 (quotation omitted). Instead, it must be "both certain and immediate." *Id.* (quotation omitted).

Mr. Posey asserts that "[i]t is self-evident that termination of [his] business is irreparable harm," and to support this assertion, he cites his own financial well-being, the financial well-being of his family, and the financial well-being of his employees. [Mot. for Prelim. Inj. at 4]. In response, the ATF argues that the alleged irreparable harm is "inevitable" if the Court "upholds the revocation." [ATF's Resp. at 11]. The ATF's argument, in light of the Court's determination that Mr. Posey is unlikely to succeed on the merits, is persuasive because self-inflicted harm does not constitute irreparable harm for the purpose of a preliminary injunction. The Court's analysis of the merits illustrates that ATF acted lawfully in closing down Posey Gun and Pawn

18

because Mr. Posey was operating the business unlawfully. *See* 18 U.S.C. § 923(e) ("The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter[.]"). The irreparable harm that Mr. Posey complains of is therefore entirely self-inflicted. *See Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 104 (6th Cir. 2010) (affirming the district court's denial of a motion for preliminary injunction, which included the district court's determination that "self-inflicted harm is not the type that injunctions are meant to prevent"); *Salt Lake Tribune Pub'n Co. v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable[.]"); *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) ("[S]elf-inflicted wounds are not irreparable injury."); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) ("If the harm complained of is self-inflicted, it does not qualify as irreparable."). Mr. Posey therefore fails to show that he would suffer irreparable harm without a preliminary injunction.

### C.  Substantial Harm to Others

Next, Mr. Posey must show that a preliminary injunction would not result in substantial harm to others. When addressing whether a preliminary injunction would cause substantial harm to others, the Court may consider potential harm to a defendant and to non-parties. *See Ramik v. Darling Intern, Co.*, 161 F. Supp. 2d 772, 778 (E.D. Mich. 2001) ("[I]t appears that the issuance of the injunction would not cause substantial harm to non-parties, but it certainly would cause harm to Defendant." (citing *Chrysler Corp. v. Franklin Mint Corp.*, No. 93–2522, 1994 WL 378144, at * 2 (6th Cir. 1994))).

19

In contending that a preliminary injunction would not cause substantial harm to others, Mr. Posey offers a cadaverous argument, asserting only that "[t]he hardship on Plaintiff, as noted above, is very substantial, whereas there is virtually no hardship on ATF if Plaintiff remains in business while judicial review is pending." [Mot. for Prelim. Inj. at 4]. But again, the hardship that Mr. Posey identifies—the closure of his business and impending financial hardship—does not move the dial because it is self-inflicted. Besides, the ATF crafts a persuasive argument as to the harm that an injunction would cause to the public. *See* [ATF's Resp. at 12–14].

The purpose of the Gun Control Act is to protect the public. *Abramski v. United States*, 573 U.S. 169, 181 (2014). In 2018, the ATF informed Mr. Posey that "[t]he violations for which you were cited could adversely impact law enforcement's ability to reduce violent crime and protect the public." [Admin. R. at 356]. In this same vein, Investigator Levesque testified that Mr. Posey's subsequent violations endangered the public:

> Q. Does it affect public safety when the AFT cannot trace a firearm?
>
> A. Yes.
>
> Q. And when information is reported falsely on ATF Forms 4473 and multiple sales reports, does that create problems?
>
> A. Huge.

[*Id.* at 188:2–8].

As one district court stated, the Gun Control Act "protect[s] the public from firearms ending up in the wrong hands, which can easily happen where a licensed dealer repeatedly demonstrates plain indifference to the GCA requirements." *Shawano Gun & Loan, LLC v. Hughes*, No. 09-C-150, 2010 WL 3062847, at *6 (E.D. Wis. Aug. 2, 2010). This statement is highly applicable to Mr. Posey because the record shows that he caused a firearm to end up in the wrong hands by selling one to "a mental defective" without conducting a proper background

20

check, and both the Tennessee Bureau of Investigation and the Cleveland Police Department had to become involved in retrieving the firearm. [Admin. R. at 470–71]. When the Court considers the threat that Mr. Posey's past misconduct posed to the public, it can only conclude that a preliminary injunction that allows Mr. Posey to return to business has the potential to cause substantial harm to others. Mr. Posey therefore fails to show that a preliminary injunction would not result in substantial harm to others.

### D. Public Interest

Lastly, as for the question of whether a preliminary injunction would serve the public interest, Mr. Posey argues only that "the public interest lies in favor of granting a stay" because "Congress intended for the stay to remain in place." [Mot. for Prelim. Inj. at 5]. The Court has already rejected Mr. Posey's argument that § 923(f) requires a stay while he pursues judicial review, so he makes no headway in renewing that argument here. Mr. Posey therefore fails to demonstrate that the public interest warrants a preliminary injunction.

### V. CONCLUSION

Under Rule 65, Mr. Posey fails to meet his burden of establishing that he is entitled to a preliminary injunction against the ATF, and his motion for preliminary injunction [Doc. 9] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE

21