UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TERRY POSEY d/b/a POSEY GUN AND PAWN, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-CV-00051-JRG-CHS ) |
| MERRICK GARLAND, Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; and THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. 30], Defendants' Memorandum in Support of Motion for Summary Judgment [Doc. 31], Plaintiff Terry Posey's, d/b/a Posey Gun and Pawn, Cross-Motion for Summary Judgment and Response [Doc. 32], and Defendants' Reply in Support of Motion for Summary Judgment [Doc. 33]. For the reasons herein, the Court will grant Defendants' motion and deny Mr. Posey's motion.

### I. BACKGROUND

The proprietor of Posey Gun and Pawn in Cleveland, Tennessee, Mr. Posey received a license in 2011 from the Bureau of Tobacco, Alcohol, Firearms, and Explosives ("ATF") to operate as a licensed firearms dealer. *See* [Admin. R.. Doc. 22- 1, at 138:22–24]; *see* [Admin. R., Gov't Ex. 1, Doc. 22-1, at 301].[1] When he received his license in 2011, the ATF conducted a "qualification inspection" of his premises, i.e., Posey Gun and Pawn. [Admin. R. at 138:25, 139:1–

---

[1] Pincites to the record refer to electronic page numbers.

8]. During a qualification inspection, the ATF's customary practice is to review relevant record-keeping laws and regulations with the new licensee. [*Id.* at 139:1–8]. As a licensed firearms dealer, Mr. Posey had a legal obligation to comply with the record-keeping requirements under the Gun Control Act, 18 U.S.C. § 921 *et seq.*, and with the record-keeping requirements under 27 C.F.R. §§ 478.121–478.134. *See* 18 U.S.C. § 923(g)(1)(A) (providing that "[e]ach . . . licensed dealer shall maintain such records of . . . shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe"). Posey Gun and Pawn was subject to inspections, known as "compliance inspections," [Admin. R. at 133:9–18], to ensure its compliance with these record-keeping requirements, 18 U.S.C. § 923(g)(B)–(C). A compliance inspection typically involves a review of record-keeping transactions and a review of inventory. [Admin. R. at 133:9–18].

In 2017, Patricia Armstrong, an ATF investigator, performed a compliance inspection of Posey Gun and Pawn and found thirteen regulatory violations, including a false statement or representation made on records submitted to the ATF, failure to adhere to background-check requirements, employment of a person prohibited from lawfully possessing a firearm, failure to complete and submit sales forms, and failure to properly complete ATF Form 4473.[2] [*Id.* at 139:9–25, 140:1–10; Admin. R., Gov't Ex. 9 at 341–50; Final Notice of Revocation, Doc. 10-1, at 3].[3] Some of the violations occurred multiple times and in some instances dozens of times. *See* [Admin. R., Gov't Ex. 9 at 341–50]. Mr. Posey received a copy of the report of violations during the inspection and again by mail, *see* [*id.* at 351], and Ms. Armstrong later conducted a "warning

---

[2] Form 4473 is a transactional record that licensees must keep "to verify that all over-the-counter transactions involve qualified purchasers." *Armalite, Inc. v. Lambert*, 544 F.3d 644, 645 (6th Cir. 2008) (citation omitted).

[3] "In a proceeding conducted under [18 U.S.C. § 923(f)(3)], the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative hearing][.]" 18 U.S.C. § 923(f)(3).

conference" with him, [Admin. R. at 140:6–13]. A warning conference is a formal, in-person meeting between the licensee and the ATF investigator and staff, and it is meant not only to ensure the licensee "understands what's expected from the complaint's point of view" but also to "give[] the licensee a chance to explain what happened and . . . explain what measures are going to be taken to prevent future repeat violations." [*Id.* at 140:24–25, 141:1–5].

At the warning conference, Mr. Posey expressed his understanding of the regulations at issue and of how his conduct had violated those regulations. He said, for instance, that "he now understood the requirements for [completing and submitting ATF Form 3310.4] for a multiple handgun sale," that "he knows [he] needs to do a better job of reviewing the form (ATF Form 4473)," that "now it was his intention to make sure every form was double checked before it is filed," and that "he understands the firearms must be recorded on the actual date of acquisition." [Admin. R., Gov't Ex. 9 at 353, 354, 356]. He also signed a document titled "Acknowledgement of Federal Firearms Regulations," [*id.* at 359–60], which contains columns referring to the regulations at issue and Mr. Posey's initials next to each of those regulations, [*id.*]. According to the ATF, this document means that "Mr. Posey was explained those regulations that all are initialed by Mr. Posey here, and that he understood what was expected." [Adm. R. at 142:7–13]. After the warning conference, the ATF mailed a letter to Mr. Posey, alerting him that he "may anticipate further inspections to ensure [his] compliance" and that "future violations, repeat or otherwise, could be viewed as willful and may result in the revocation of [his] license." [*Id.* at 356].

In 2019, Kevin Levesque, an ATF investigator, performed a follow-up compliance inspection of Posey Gun and Pawn and found thirteen statutory and regulatory violations, some of which were repeat violations. [Admin. R. at 137:5–11, 188:24–25, 189:1–2; Admin. R., Gov't

3

Ex. 6 at 314–26]. The violations included a false statement or representation made on records submitted to the ATF; failure to report sales of firearms; unlawful sale or delivery of a firearm to an underage person; failure to adhere to background-check requirements; failure to maintain an accurate, complete, and timely acquisition and disposition record of firearms; and a failure to properly complete Form 4473. [Admin. R., Gov't Ex. 6 at 325–26]. Some of these violations occurred multiple times and in some instances dozens of times. [*Id.*]. For instance, Investigator Levesque recorded 383 total violations related to the completion of Form 4473. [*Id.*].

In 2022, Mr. Posey received notice of the ATF's intent to revoke or suspend his license. [Admin. R., Gov't Ex. 2 at 302–06; Admin. R., Gov't Ex. 3 at 309]. In that notice, the ATF identified seventeen violations of the Gun Control Act and the Code of Federal Regulations and alleged that those violations were willful. [Admin. R., Gov't Ex. 2 at 303–04].[4] Mr. Posey requested and received a hearing, at which counsel represented him. The hearing officer found that Mr. Posey had committed each of the alleged violations and that he did so willfully.[5] [Final Notice of Revocation at 4–10]. The hearing officer stated: "Despite ATF's numerous attempts to educate licensee, impress upon [Mr. Posey] the importance of compliance, and instruct on the need for accurate record keeping, [he] has continued to be indifferent to [his] obligations under the GCA." [*Id.* at 10]. Finding Mr. Posey's proclivity for making false statements in his records to be "particularly egregious" because it required intentional or knowing conduct,[6] the hearing

---

[4] Although Mr. Posey had allegedly committed many more violations, *see* [Admin. R., Gov't Ex. 6 at 315–26], the ATF elected to move forward with only the most serious violations, which often include repeat violations, [Admin. R. at 188:15–23].

[5] Under the Gun Control Act, "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has *willfully* violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter[.]" 18 U.S.C. § 923(e) (emphasis added).

[6] At the hearing, Investigator Levesque explained that, during his follow-up compliance check in 2019, he discovered that two Glock 40 pistols were missing from Mr. Posey's inventory at Posey Gun and Pawn, and when he inquired about what had happened to them, Mr. Posey presented him with ATF Form 4473 and ATF Form 3310.4,

4

Case 1:23-cv-00051-JRG-CHS   Document 34   Filed 04/22/24   Page 4 of 20   PageID #: 551

officer concluded that Mr. Posey's "history of failing to comply with regulations clearly meets the legal standard for plain indifference of the record keeping requirements," and he therefore revoked Mr. Posey's license, [*id.*], with an effective date of January 21, 2023, *see* [ATF Letter, Doc. 10-3, at 1]. Mr. Posey, through his attorney, requested a stay of the effective date through March 20, 2023, and the ATF granted his request. [*Id.*]. Although he later requested a second stay, the ATF denied his request because this Court had jurisdiction over his case by that time. [*Id.*].

Mr. Posey now challenges the ATF's decision to revoke his license, claiming that "[e]ach [of the hearing officer's] finding[s] w[ere] incorrect" because "the ATF failed to show [he] in any way acted willfully." [Compl., Doc. 1, at 4]. Under 18 U.S.C. § 923(f)(2) and (f)(3), he first moved the Court to stay the revocation of his license until this case's resolution, [Mot. Prelim. Inj., Doc. 9, at 2–3], and "[i]n the alternative," for a preliminary injunction, [*id.* at 3]. The Court denied his requests for a stay and an injunction. [Mem. Op. & Order, Doc. 24]. The parties have now filed cross-motions for summary judgment on the question of whether Mr. Posey, based on the administrative record, willfully violated the Gun Control Act, or in other words, whether the ATF acted within its authority when it revoked his license. Having carefully reviewed and considered the parties' motions and arguments, as well as the administrative record, the Court is now prepared to rule on them.

---

in which Mr. Posey had written that the Glocks had been transferred to a certain individual. But when Investigator Levesque contacted this individual, he stated that he did not purchase the two Glocks 40s and did not even know, in terms of caliber, what a Glock 40 was. [Admin. R. at 178:22–25, 179:1–25, 180:1–25, 181:1–25, 182:1–25, 183:1–25, 184:1–25, 185:1–16].

## II. LEGAL STANDARD

Summary judgment is proper when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the nonmoving party's" claim or defense, *Celotex*, 477 U.S. at 325, at which point the nonmoving party, to survive summary judgment, must identify facts in the record that create a genuine issue of material fact, *id.* at 324.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case under the applicable substantive law, *id.*, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A court may also

6

resolve pure questions of law on a motion for summary judgment. *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 550 (6th Cir. 2015).

### III. ANALYSIS

Under the Gun Control Act, "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has *willfully* violated *any* provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter[.]" 18 U.S.C. § 923(e) (emphasis added). Based on this statute's plain language, "a single willful violation of the GCA, or of its rules and regulations, suffices to revoke a firearms license." *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008) (citation omitted). When the Attorney General decides to revoke a licensee's license, the licensee may seek judicial review of that decision in federal district court, and in determining the propriety of that decision, the district court conducts a de novo review. 18 U.S.C. § 923(f)(3).

The scope of this de novo review is the subject of some debate between the parties. According to Mr. Posey, "Defendants appear to suggest that the Court must give some level of deference to the ATF's decision to revoke [his] license," [Pl.'s Mot. for Summ. J. at 2], though Defendants contend that they "have not asserted that the Court must give deference to the ATF's decision," [Defs.' Reply at 2]. To the extent that the parties do dispute whether the Court should or must give deference to the ATF's decision, the Court finds merit in Mr. Posey's argument because a de novo standard of review requires the Court to take a dispassionate view of the administrative proceedings, not a deferential one. *See United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 368 (1967) (observing that "de novo review" means "that the court should make an independent determination of the issues" and "not . . . give any special weight to the [prior] determination" of the administrative agency); *see also United States v. Raddatz*,

7

447 U.S. 667, 675 (1980) (stating that a de novo review requires the district court "to give fresh consideration" to the issues before it (quotation omitted)); *id.* at 690 (Stewart, J., dissenting) ("The phrase 'de novo determination' has an accepted meaning in the law. It means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy."); *Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980) (stating that, under § 923(f)(3), "the trial court need not accord any particular weight" to an agency's findings and decision unless, in its discretion, it chooses to); *Kuss v. United States, Bureau of Alcohol, Tobacco & Firearms*, 440 F. Supp. 2d 645, 649 (E.D. Ky. 2005) (opining that, under § 923(f)(3), "the trial court need not accord any particular weight to the administrator's findings and decision" but "may, in the exercise of its discretion, accord them such weight as it finds to be appropriate").

A de novo review under the Gun Control Act "is limited to the question of whether the Attorney General was 'authorized to [revoke the license],'" *Fulkerson v. Sessions*, No. 17-5874, 2018 WL 3726278, at *2 (6th Cir. Mar. 23, 2018) (quoting 18 U.S.C. § 923(f)(3)), or in other words, whether the revocation "was authorized because the record reflects that [the licensee] willfully violated the Act," *id.* The de novo standard of review and the legal standard governing motions for summary judgment under Rule 56—both of which are simultaneously in play in this case—are not, incidentally, incompatible with each other. The Sixth Circuit, for example, often reviews awards of summary judgment through the prism of a de novo standard of review. *See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) ("The standard of review for summary judgment is de novo." (citation omitted)).

Under Rule 56, Court's initial task is to review the record for genuine issues of material fact. *See 3 Bridges, Inc. v. United States*, 216 F. Supp. 2d 655, 657 (E.D. Ky. 2002) ("[S]ummary

8

judgment may be appropriate upon *de novo* review on the basis of the administrative record when [1] no substantial reason to receive additional evidence is present and [2] when 'material facts developed at the administrative hearing . . . are not substantially drawn into question by the party petitioning for review.'" (quoting *Cucchiara v. Sec'y of the Treasury*, 652 F.2d 28, 30 (9th Cir. 1981))). As the party seeking review of the ATF's decision, Mr. Posey concedes that the record contains no genuine issues of material fact. [Pl.'s Mot. for Summ. J. at 1 ("Plaintiff agrees that there are no issues of material fact at issue in this case.")].[7] In addition, apart from the administrative record, the parties have presented no other evidence to the Court for its consideration,[8] and both parties rely exclusively on the administrative record in moving for summary judgment. *See* [Defs.' Mot. for Summ. J. at 1 ("Defendants rely upon the official administrative record (redacted) previously filed in this case[.])"]; [Pl.'s Mot. for Summ. J. at 2 (calling on the Court to conduct "[a] de novo review of the administrative record")]; *see also* [Parties' Rule 26(f) R., Doc. 26, at 2 ("The parties . . . agree that this Court can conduct its *de novo* review hearing based solely upon the redacted official administrative record[.]")].

Because Mr. Posey concedes that the record lacks genuine issues of material fact, the Court's summary-judgment analysis is halfway at an end, and the lone issue now before the Court is whether the undisputed facts—i.e., the administrative record—entitle either party to

---

[7] The parties previously "anticipate[d] that a *de novo* review hearing would be conducted" but "defer[red] to the Court on the proper procedure." [Parties' Rule 26(f) R., Doc. 26, at 2]. Mr. Posey's concession that the record contains no genuine issues of material fact obviates the need for any hearing, *see Bourne v. Curtin*, No. 07–15247, 2009 WL 2424192, at *14 (E.D. Mich. Aug. 6, 2009) ("The purpose of an evidentiary hearing is to resolve a factual dispute[.]" (citation omitted)); *see also New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, No. 12-91-GFVT, 2016 WL 3951086, at *7 (E.D. Ky. July 20, 2016) ("The purpose of an evidentiary hearing is not to debate the proper legal standards governing a particular issue . . . . Rather, the purpose of an evidentiary hearing is to help resolve a credible, existing factual dispute."); *cf. United States v. Jones*, 260 F. App'x 769, 774 (6th Cir. 2008) ("The purpose of an evidentiary hearing is to present evidence in the possession of the requesting party[.]").

[8] Again, "[i]n a proceeding conducted under [§ 923(f)(3)], the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the [administrative] hearing[.]" 18 U.S.C. § 923(f)(3).

judgment as a matter of law. *See Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) ("[S]ummary judgment is appropriate where [1] there 'is no genuine issue as to any material fact' *and* [2] the moving party is 'entitled to judgment as a matter of law.'" (emphasis added) (quoting Fed. R. Civ. P. 56(c))). A party is entitled to judgment as a matter of law when the evidence is "so one-sided" that a reasonable jury could only find in his favor. *Anderson*, 477 U.S. at 251–52. The evidence in this case must be so one-sided on the issue of willfulness, *see Fulkerson*, 2018 WL 3726278 at *3 ("Although there was some evidence to the contrary, the record as a whole reflects that the ATF denied the [licensees'] application based on strong evidence that [the licensees] had engaged in multiple willful violations of the Act. The district court's grant of summary judgment in favor of the government on this matter was therefore proper."), which is the issue that the parties ask the Court to decide, *see* [Pl.'s Mot. for Summ. J. at 1 ("[T]he Court should find that Plaintiff's actions were not willful as a matter of law.")]; [Defs.' Mem. at 14 ("[T]he undisputed evidence demonstrates that Plaintiff committed willful violations of the GCA.")].

Although the parties wrangle over the definition of "willfulness" under § 923(e), that definition, at least in the Sixth Circuit, is pellucid. A licensee willfully violates the Gun Control Act or an applicable rule or regulation when he understands his legal obligations under these laws yet intentionally or knowingly violates them or acts with plain indifference to them, i.e., recklessly violates them. *Armalite*, 544 F.3d at 647; *see Fulkerson*, 2018 WL 3726278 at *2 ("An individual willfully violates the Act when he or she 'intentionally, knowingly or recklessly violates known legal requirements.'" (quoting *id.* at 648)). Negligence will not do to establish willfulness. *Armalite*, 544 F.3d at 647–48. Defendants assert that Mr. Posey's violations of the Gun Control Act and the Code of Federal Regulations were willful because he "committed

10

repeated violations after he had been informed and warned of the regulations and after he had acknowledged understanding of the regulations." [Defs.' Mem. at 14]. Mr. Posey, however, argues that the record shows he was "at best negligent with respect to each violation" and that "no court has held 'that a negligent violation of the statute suffices to establish a cognizable GCA violation.'" [Pl.'s Mot. for Summ. J. at 3 (quoting *Armalite*, 544 F.3d at 648)].

In considering the parties' arguments and addressing whether the record evidence is so one-sided so as to warrant judgment as a matter of law for either party, the Court reiterates a statement it made when it denied Mr. Posey's motion for a preliminary injunction: "[T]he record is flush with evidence demonstrating that Mr. Posey, before committing the alleged violations at issue, understood his legal obligations under the relevant provisions of the Gun Control Act and the Code of Federal Regulations." [Mem. Op. & Order at 16]. Defendants correctly argued then, and correctly argue again now, that at the time of the violations at issue in 2019, Mr. Posey had both knowledge of his obligations and a history of previous violations. [Defs.' Mem. at 2–10, 14–16]. The evidence of his knowledge includes:

- The ATF's qualification inspection in 2011, at which the ATF's usual practice is to review the relevant record-keeping laws and regulations with the new licensee. [Admin. R. at 139:1–8];

- The ATF's warning conference in 2017, at which Mr. Posey stated that "he now understood the requirements for [completing and submitting ATF Form 3310.4] for a multiple handgun sale," that "he knows [he] needs to do a better job of reviewing the form (ATF Form 4473)," that "now it was his intention to make sure every form was double checked before it is filed," and that "he understands the firearms must be recorded on the actual date of acquisition." [Admin. R., Gov't Ex. 8 at 353, 354, 356]; and

- Mr. Posey's signature and initials on the "Acknowledgement of Federal Firearms Regulations," [*id.* at 359–60], which contains columns referring to the regulations at issue and Mr. Posey's initials next to each of those regulations, [*id.*].

11

And yet, Mr. Posey, despite his complete awareness and understanding of his legal obligations, committed a slew of additional violations in 2019, some of which were recurring violations from 2017. [Admin. R. at 137:5–11, 188:24–25, 189:1–2; Admin. R., Gov't Ex. 6 at 314–26].

Mr. Posey's history of violations is evidence of plain indifference to his known legal obligations. *See Armalite*, 544 F.3d at 649–50 (stating that "the essence" of plain indifference to known legal obligations "lies in [a party's] *consistent* failure to ensure full and accurate" compliance with the law (emphasis added)). His violations persisted—and, in fact, increased— even after the ATF, in 2017, had apprised him in detail of the violations, impressed upon him the importance of compliance with the law, instructed him on how to take corrective actions, and warned him that it could view future violations as willful and revoke his license. *See Garner*, 345 F. App'x 66, 73–74 (6th Cir. 2009) ("[W]hen such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements." (quoting *RSM, Inc. v. Herbert*, 466 F.3d 316, 322 (4th Cir. 2006))).

In an attempt to color his repeated violations as unwilful in nature, Mr. Posey relies on *Paducah Shooters Supply, Inc. v. Rogers*, ___ F. Supp. 3d ___, 2023 WL 5769364 (W.D. Ky. Aug. 12, 2023), in which the district court enjoined the ATF's revocation of Paducah Shooters Supply, Inc.'s federal firearms license. In *Paducah Shooters Supply*, the violations at issue occurred in 2015, 2017, and 2022. In 2015, the ATF uncovered "numerous" violations; in 2017, the ATF found "a smaller number" of violations; and in 2022, it flagged sixty violations. *Id.* at *2. Paducah Shooters Supply claimed that the violations were due to negligence, not willfulness. *Id.* at *3, *6. In addressing Paducah Shooters Supply's likelihood of success on the merits, the district court homed in on Paducah Shooters Supply's size and the volume of its

12

business, commenting that Paducah Supply Shooters was originally a "mom-and-pop shop" but had "grown rapidly during the last five years" to become "the fourth largest gun dealer in Kentucky." *Id.* at *1, *2. In 2022, for instance, it sold 6,110 guns. *Id.* at *2.

According to the district court, "the volume of violations is . . . relevant to whether it is appropriate to draw an inference that violations were willful rather than negligent," *id.* at *7 n.13, and it noted that Paducah Shooters Supply's "violations [were] spread over a seven-year period, straddle[d] a period of high growth, and involve[d] a small number of errors relative to the annual volume of sales," *id.* (footnote omitted). "Sixty violations across a few hundred sales in a few months might give rise to a very strong inference of willfulness," the district court reasoned, but "the same number across thousands of sales in a year implies much less." *Id.* (citing *Garner*, 345 F. App'x at 72–72). The district court therefore concluded that Paducah Shooters Supply's "negligence defense is likely to prevail." *Id.* at *8. Mr. Posey maintains that his "case's facts mirror th[ose] of *Paducah Shooters Supply*." [Pl.'s Mot. for Summ. J. at 3]. Defendants, however, disagree, contending that Paducah's facts are distinguishable from Mr. Posey's case. [Defs.' Reply at 2].

*Paducah Shooters Supply*'s facts are indeed distinct from the facts in Mr. Posey's case. Again, the pith of the district court's merits-based determination in *Paducah Shooters Supply* was an analysis of Paducah Shooters Supply's size and the volume of its business, and for good reason. In 2022, the year of the ATF's most recent inspection, Paducah Shooters Supply had allegedly committed sixty violations while registering 6,110 sales of guns, figures that equate to just one violation per roughly every hundred sales, or a violation rate of less than one percent. And, significantly, the frequency of the violations *decreased* with each successive inspection by the ATF—from "numerous" violations in 2015, to "a smaller number" of violations in 2017, to

13

the violation rate below one percent in 2022. *Paducah Shooters Supply*, 2023 WL 5769364 at *1, *2; *see Garner*, 345 F. App'x at 73 (recognizing that "willfulness . . . does not demand perfection from licensees—it leaves room for the occasional incident of human error" (quoting *Am. Arms. Int'l v. Herbert*, 563 F.3d 78, 87 (4th Cir. 2009))). In short, even as Paducah Shooters Supply's business grew, its compliance with the Gun Control Act and the Code of Federal Regulations *improved*.

Mr. Posey cites no evidence demonstrating that Posey Gun and Pawn's size or its sales were comparable to those of Paducah Shooters Supply, and while Paducah Shooters Supply's "violations [were] spread over a seven-year period," *id.* at *7, this fact does not apply to Posey Gun and Pawn. Posey Gun and Pawn's violations did not span a seven-year period but an approximate two-year period from 2017 to 2019, and unlike Paducah Shooters Supply, which had reduced its violations "to a smaller number" over a two-year period from 2015 to 2017, *id.*, Posey Gun and Pawn's violations *increased* from 2017 to 2019, *see, e.g.*, [Admin. R., Gov't Ex. 6 at 325–26 (documenting 383 violations related to the completion of Form 4473 alone)]. In addition, Mr. Posey points to no evidence showing that the violations in question "straddle[d] a period of high growth" or "involved a small number of errors relative to the annual volume of sales." *Paducah Shooters Supply*, 2023 WL 5769364 at *7. In fact, in an affidavit that he filed with his motion for a preliminary injunction, he declares that Posey Gun and Pawn carries an inventory of roughly 800 firearms. [Aff. of Terry Posey, Doc. 9-1, ¶ 5]. Paducah Shooters Supply's sales of 6,110 guns—not its inventory but its *sales* alone—dwarf that number.

But Mr. Posey continues to cleave to *Paducah Shooters Supply*, going on to highlight a specific passage that he believes applies to him:

> [N]othing in the record indicates Shooters Supply didn't just violate the regulations, but didn't even *care* whether it violated them. To the contrary, the record before the

14

> Court—which mirrors the record before the agency—indicates the store has attempted to correct process failures, cooperated with law enforcement, taken disciplinary action against rule-breakers, and adopted software and process changes meant to improve compliance. All of this suggests mistakes (potentially grave ones, to be sure) rather than intentional violations.

*Paducah Shooters Supply*, 2023 WL 5769364 at *1. In Mr. Posey's view, the record is "replete with what amount to nothing more than conclusory statements that [his] actions were willful," and he maintains that, with one of the violations, he made "an honest mistake" and, with another violation, he "immediately took steps to remedy the problem." [Pl.'s Mot. for Summ. J. at 4]. In response, Defendants argue that at some point repeated negligence becomes willfulness and that point is now for Mr. Posey. [Defs.' Reply at 5]; *see Armalite*, 544 F.3d at 650 ("At some point, repeated negligence becomes recklessness[.]" (citations omitted)).

In contending that his actions were honest or negligent rather than willful, Mr. Posey begins with an alleged violation from November 2019, when the ATF accused him of willfully violating 18 U.S.C. § 922(b)(1) and 27 C.F.R. § 478.99(b)(1), both of which outlaw the sale of a firearm other than a rifle or shotgun to a person under the age of twenty-one. Insisting that he made an honest mistake, he cites his testimony from the administrative hearing, during which he stated that "he did not know that the particular firearm was one that could not be transferred to someone under twenty-one." [Pl.'s Mot. for Summ. J. at 4]. But on the ATF Form 4473 that accompanied the sale, he noted that the person was under twenty-one and that the firearm was not a rifle or shotgun. [Admin. R. at 469–70]. And while this sale was not a repeat violation, Mr. Posey, in the Acknowledgement of Federal Firearms Regulations that he had completed in 2017, expressed his knowledge and understanding of § 478.99(b)(1). [*Id.* at 359–60].

Because he had prior knowledge and understanding of this regulation, his violation of it could suggest plain indifference. But then again, it could also suggest something benign like

carelessness. After all, Agent Levesque admitted during his testimony that Mr. Posey maybe "didn't pay attention" when he made the sale, [Admin. R. at 151:23], and this admission lends support to Mr. Posey's defense of negligence, *see Garner*, 345 F. App'x at 73 (recognizing that "willfulness . . . does not demand perfection from licensees—it leaves room for the occasional incident of human error" (quoting *Am. Arms. Int'l v. Herbert*, 563 F.3d 78, 87 (4th Cir. 2009))). As to the alleged violation of § 478.99(b)(1), the evidence is therefore not so one-sided so as to show that Mr. Posey acted willfully as a matter of law. *See id.* at 72 (observing that a licensee's knowledge of the Gun Control Act's legal requirements is not, by itself, sufficient to establish a willful violation).

But what about the other alleged violations? Again, they are many—and they consist of rafts of repeat violations—and evidence of just one willful violation is enough to justify the ATF's revocation of Mr. Posey's license. *See Armalite*, 544 F.3d at 647 (stating that even "a single willful violation of the GCA, or of its rules and regulations, suffices to revoke a firearms license" (citation omitted)); *see also Garner*, 345 F. App'x at 73 ("[P]lain indifference can be found even where nine times out of ten a licensee acts in accordance with the regulations, if he was plainly indifferent to the one-in-ten violation." (quotation omitted)). In seeking summary judgment, Mr. Posey directs the Court's attention only to one other alleged willful violation, under 18 U.S.C. § 922(t)(5) and 27 C.F.R. § 478.102(a), both of which require a firearms dealer to perform and wait for the results of a background check before selling a firearm to a person who is unlicensed under the Gun Control Act to ensure the sale does not violate federal or state laws. In April 2021, Mr. Posey did not await the results of a background check before selling a firearm to an individual whom the background check later revealed to be a "mental defective."

16

[Admin. R. at 470–71]. Both the Tennessee Bureau of Investigation and the Cleveland Police Department had to become involved in retrieving the firearm. [*Id.*].

According to Mr. Posey, his violation of § 478.102(a) cannot qualify as willful because he "immediately took steps to remedy the problem and the firearm was returned the same day," [Pl.'s Mot. for Summ. J. at 4], but any evidence that he took remedial actions to correct this violation is inconsequential to a determination of willfulness, *see Procaccio v. Lambert*, 233 F. App'x 554, 559 (6th Cir. 2007) ("[The licensee's] argument that his post-inspection efforts are probative of his willfulness is without merit. What matter are his actions at the time the violations occurred." (citations omitted)); *see id.* ("The fact that [the petitioner] has spent a great deal of money trying to correct his faulty recordkeeping system, after the violations[] . . . is immaterial to the question of willfulness at the time the violations occurred." (quoting *Cucchiara v. Sec'y of the Treasury*, 652 F.2d 28, 30 (9th Cir. 1981))). Although Mr. Posey goes on to assert that Agent Levesque found that he willfully violated § 478.102(a) "without any further explanation," [Pl.'s Mot. for Summ. J. at 4], this assertion is meritless—and reads as an effort on Mr. Posey's part to rewrite the record—because Agent Levesque testified that the violation was willful for two reasons: (1) Mr. Posey previously violated this regulation in 2017 and (2) Mr. Posey expressed his knowledge and understanding of this regulation after the violation in 2017. [Admin. R. at 163:5–25, 164:1–25]. In short, this was a repeat violation. *See* [*id.* at 164:19–20; Final Notice of Revocation at 6].

The repeat violations, when coupled with the record's incontrovertible evidence of Mr. Posey's complete awareness and understanding of his legal obligations, are what doom him. In 2017, he stated that "he knows [he] needs to do a better job of reviewing the form (ATF Form 4473)" and that "now it was his intention to make sure every form was double checked before it

17

is filed," [Admin. R. at 354], but instead of doing better, he actually did worse because the frequency of the violations involving Form 4473, specifically, increased in 2019:

| Regulation | Number of Violations in 2017 | Number of Violations in 2019 |
|---|---|---|
| 27 C.F.R. § 478.21(a) | 33 [Admin. R. at 354] | 48 [Admin. R. at 315] |
| 27 C.F.R. § 478.124(c)(1) | 81 [Admin. R. at 354] | 104 [Admin. R. at 315] |
| 27 C.F.R. § 478.124(c)(3)(i) | 6 [Admin. R. at 354] | 156 [Admin. R. at 315] |
| 27 C.F.R. § 478.124(c)(3)(iv) | 94 [Admin. R. at 354] | 31 [Admin. R. at 315] |
| 27 C.F.R. § 478.124(c)(4) | 21 [Admin. R. at 354] | 20 [Admin. R. at 315] |
| 27 C.F.R. § 478.124(c)(5) | 12 [Admin. R. at 354] | 24 [Admin. R. at 315] |
| | **TOTAL: 247** | **TOTAL: 383** |

Between 2017 and 2019, Mr. Posey's cumulative violations involving Form 4473, specifically, skyrocketed by approximately 155 percent, despite his prior knowledge and understanding of the regulations at issue, despite his acknowledgement that he needed to do a better job, and despite the ATF's warning that continual violations could be viewed as willful and may result in the revocation of his license.

"The essence of . . . plain indifference to the legal requirements of 27 C.F.R. § 478.124[] lies in . . . consistent failure to ensure full and accurate completion of 4473 forms." *Armalite*, 544 F.3d at 649–50. Posey Gun and Pawn's violations were beyond consistent; they were prodigious. "[W]hen such [violations] continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements,"

18

and "[*a*]*t that point*, the failures show the licensee's plain indifference and therefore become willful." *Garner*, 345 F. App'x at 73–74 (emphasis in original) (quoting *RSM, Inc. v. Herbert*, 466 F.3d 316, 322 (4th Cir. 2006))). For all the reasons the Court has identified in this opinion, this record is at that point, abounding with evidence so one-sided on the issue of Mr. Posey's willfulness that Defendants are entitled to judgment as a matter of law, and no reasonable jury could conclude otherwise.

## IV. CONCLUSION

As the movants for summary judgment, Defendants satisfy their burden of establishing that they are entitled to summary judgment, whereas Mr. Posey, as the cross-movant, fails to establish that he is entitled to summary judgment. The Court, after de novo review, therefore **ORDERS** as follows:

1. The ATF's decision to revoke Mr. Posey's federal firearms license was authorized, and its decision and Final Notice of Revocation [Doc. 10-1] are hereby **AFFIRMED**;

2. Mr. Posey's federal firearms license, No. 1-62-011-02-3B-05028, is hereby **REVOKED**;

3. Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED**;

4. Mr. Posey's Cross-Motion for Summary Judgment [Doc. 32] is **DENIED**; and

5. The Clerk of Court is **DIRECTED** to close this case.

The Court will enter an order consistent with this opinion.

So ordered.

ENTER:

                                               s/J. RONNIE GREER
                                    UNITED STATES DISTRICT JUDGE